DYKE E. HUISH, ESQ.
SBN 167690
26161 MARGUERITE PARKWAY
SUITE B
MISSION VIEJO, CA, 92692
Telephone: (949) 837-8600

Huishlaw@mac.com

*Attorney for Defendant, Tatiana Farook*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.:  0973-2:16-CR-00292-2 |
| Plaintiff | **SENTENCING MEMORANDUM** |
| vs. | **HONORABLE  JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE** |
| | **HEARING :  DECEMBER 14, 2020 TIME:        2:00 PM** |
| TATIANA FAROOK | |
| Defendant. | |

## INTRODUCTION

Defendant Tatiana Farook respectfully submits the following Sentencing Memorandum to assist the Court in determining a proper sentence for her conduct.   Herein, we respectfully request that that Court consider our request for a probationary sentence that is consistent with that of her husband and Co-Defendant Syed Raheel Farook.

At the outset the defendant and her attorneys wish to declare our deepest sadness for the loss of life which took place on December 2, 2015 in San Bernardino.  The case of Ms. Tatiana Farook came to light as a result of the exceptional investigation performed by State and Federal Law Enforcement Agency's.  Collectively they performed thousands of hours of investigation

1

and interviews completing exemplary work in the face of a horrific tragedy.

We wish the Court to know that no evidence was found nor has been suggested that Ms. Tatiana Farook played any part in those appalling events.  Her crime and subsequent plea stand alone, unconnected, and separately from the acts of her brother-in-law and sister-in-law.

And yet it is hard to extradite ourselves from the long and dark shadows that falls from the insidious acts of others.  No matter how we analyze this problem we know that the cloud hangs over this sentencing.  We are all humans and we accept this as a reality.

At the same time, we also know that we are in exceptional hands given the experience and wisdom of this Court.  We do not speak words of flattery but rather comfort knowing that collectively we can transcend the murderous acts of others to analyze this problem for what it really is – an unrelated misguided act of love between sisters.

Our request for probationary sentence is based upon the following relevant factors:

1.   Ms. Farook took honest responsibility for her actions.
2.   This was not a crime of opportunity nor for personal financial gain.
3.   Her background and personal history.
4.   How this case has drastically altered her life.
5.   The unlikelihood of reoffending.
6.   A comparison of other like cases.

**NATURE OF THE OFFENSE AND CHARACTERISTICS OF TATIANA FAROOK**

While it is traditional to place large amounts of boilerplate law into a Sentencing Memorandum, we are fully aware of this Court's understanding of the United States Sentencing Guidelines and Laws.  It seems superfluous to burden Your Honor with excessive recitations of law and code which are well known by this Court.   As we seek a ruling outside the guidelines our presentation will focus on those items which we believe will assist the Court in the determination of an "individualized assessment" for Ms. Farook that meets the standards set forth in *United States v. Booker*.[1]

---

[1]   In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court made clear that the Sentencing

1    The facts of this case are simple.  The sister, Co-Defendant Chernykh, of Ms.

2    Farook, who is a Russian citizen, had come to the United States in search of a better life

3    and to be near Ms. Farook.  It is not an over exaggeration to tell this Court that Ms. Farook

4    and Ms. Chernykh are extremely close.  They share a deep love and commitment to one

5    another and have for their entire lives.  Their parents live in Israel and offer little in the

6    way of support for the two sisters. The two women have had to care for one another for the

7    bulk of their lives.

8        While living here in Riverside County, Ms. Chernykh met and began dating a man.

9    Subsquently she became pregnant.  They were not married and he quickly began to use the

10   child as a pawn in their relationship.  Additionally, the relationship was troubled and had

11   overtones of ongoing unacceptable confllict.  The situation became intolerable and Ms.

12   Chernykh was faced with a troubling dilemma, she could return to Russia and lose her

13   child or she could break the law and stay in America with her baby and to be near to her

14   sister.  She choose to stay.

15       What followed is the very crime for which Ms. Farook has accepted honest

16   responsibility.  Ms. Farook participated in a scheme, to keep her sister in the United States,

17   through a false and dishonest marriage.  Furthermore, she added to the problem when she

18   told FBI agents that the couple was properly married.  She has admitted this was wrong

19   and she should never have done this.

20

21   _____

     Guidelines are in fact just that – guidelines – and that courts are no longer required to impose sentences
22   within the range dictated by the Guidelines.  Instead, the Guidelines range is only one of a number of factors
     the District Court is required to take into account when imposing sentence. Stated another way, the Supreme
23   Court in *Booker* "rendered the Guidelines 'effectively advisory' and permitted sentencing courts to tailor
     the appropriate punishment to each offense in light of other concerns." *United States v. Cavera*, 550 F.3d
24   180, 187 (2d Cir. 2008), cert. denied, 129 S. Ct. 2735 (2009) (quoting *Booker*, 543 U.S. at 245). See also
     *Gall v. United States*, 552 U.S. 38, 48-51 & n.6 (2007) (the sentencing judge must "make an individualized
25   assessment based on the facts presented," and has "a broad command to consider 'the nature and
     circumstances of the offense and the history and characteristics of the defendant.'") (quoting 18 U.S.C. §
     3553(a)(1)).

1    Ms. Farook stands before this Court honestly taking responsibility for her actions.

2    She seeks no excuse.  However, as her lawyer, I hope the Court will permit me an

3    explanation.

4    Ms. Farook is an exceptional person.  She is kind, hard working and devoted.  She

5    acted out of love and concern for multiple people.  While this may not be a good reason for

6    criminal actions, she, like Jean Valjean in Victor Hugo's Les Miserables, performed acts

7    born out caring for others.  Her deeds had no sinister undertow nor neferious scheme.  I do

8    not make this as an emotional plea but rather as a factual reality.  Some crimes are done for

9    money, other for lust or personal pleasure.  This was done because my client loved her

10   sister and did not know another way to solve the dilemma.

11

12   **MR. FAROOK RESPECTFULLY REQUESTS A DOWNWARD**
     **VARIANCE UNDER 18 U.S.C. 3553(A)**

13

14   There is an old axiom that when a man kneels down at night, he never prays to be

15   punished but rather to be forgiven.  Perhaps this is the nature of humankind, we seek

16   understanding and forgiveness.  But it is also a duty to accept responsibility and fairly receive

17   one's punishment.  Because this too is also correct.

18   At the outset we recognize that this felony conviction will create, what Judge Jed S.

19   Raykoff described as a type of "civil death" for Ms. Farook. [2]  In these days of instant access to

20   information there will be no place that Ms. Farook can ever go, nothing she can ever do and no

21   job she will ever seek that will not see the brand of "Convicted Felon" seared across her

22

23   
24   [2] Judge Jed S. Raykoff has written extensively on imposing a sentence that considers not only the offense but also the conduct as measured against the totality of the defendant's entire life and character. *United States v. Adelson, 441 F. Supp. 2d 506 (2006).* Judge Frederic Block has addressed the collateral statutory and regulatory consequences of a felony conviction, which in themselves constitute a form of civil death, to grant a variance and impose a sentence of probation. *United States v. Nesbeth,* 15 Cr. 18 (FB) (EDNY 2016).

forehead.  Furthermore, her life and this case will always be linked to the tragic events that precipitated the investigation of this matter.  This factor supports a request for a variance from the federal guidelines on its face.  And while it is true that such a brand is placed upon all convicted felons, we seek to express its damage to this individual here in this specific case.

For her act in this case she has suffered embarrassment, worldwide humiliation through thousands of ongoing news stories, she lost her job, and was dismissed from Nursing School where she had a near perfect grade point average.  The State Nursing Board has told her she cannot become a nurse and her personal marriage has been in turmoil due to the unrelenting pressure from the family's connection to those who committed terrorist acts.  Her burdens have been uniquely different than any I have seen in my 28 years of practice.  And yet she bears it with an open and grateful heart and honest remorse.

For Ms. Farook, this case is and always will be a type of life sentence.  No matter where she goes or what she does both her actions and the horrible acts of her brother-in-law and sister-in-law will follow her.  Unlike anyone else that has committed a similar offense, her burden is enhanced and always shall be tainted for the outrageous acts of others.

For Ms. Farook, this is a reality that has followed her since the day the agents arrived at her door with the news of the shooting and it will stay with her for the rest of her life.  For this alone the Court can consider a downward variance and ultimately probation.

1
2

## MS. FAROOK IS UNLIKELY TO COMMIT THIS CRIME
## OR ANY OTHER TYPE OF CRIMES AGAIN

3      The life well lived has value.  A good woman who stumbles should be evaluated and

4   measured for who she is in her totality, not solely on the face of her mistake.  Goodness has a

5   place in the evaluation of the man, not just the crimes. The Courts agree that such a life deserves

6   to be evaluated and, if warranted, granted a downward variance from the guidelines.  In the case

7   of the *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008), the Court affirmed a 91-month

8   variance down from the guideline range based in part on "the support that the defendant stood to

9   receive from her family [and] personal qualities indicating her potential for rehabilitation."  Ms.

10  Farook is just the kind of person that warrants consideration under cases like *United States v.*

11  *Martin*.

12      Ms. Farook is above all an exceptional sister, mother, and wife.  She values the

13  simplicity of family life.  We also wish the Court to know that she does not live a flashy life.

14  She is plain in her lifestyle and she is not given to acts of tawdry behavior.  She does not drink

15  alcohol and lives a generally religious existence.  She works hard as a cosmotolgist now with

16  little hope to ever become a nurse.

17      When you look at her as a whole it is easy to see that this mistake was the beginning,

18  middle, and the end of her entire "criminal career."   She has not exhibited an predilection

19  towards criminal behavior ever before nor since.

20      Indeed, it could be argued in many ways that this is aberrant behavior and should be

21  granted a downward departure on its face.

22      The U.S. Sentencing Commission recently completed a multi-year study  and a report

23  was released on January 13, 2013, entitled, ***Recidivism of Offenders on Federal Community***

24  ***Supervision.***[3]  The report identifies several factors that can increase or decrease a person's risk of

25

---

[3] The report was authored by William Rhodes, Ph.D., Christina Dyous, M.A., Ryan Kling, M.A., Dana

committing a new offense or being revoked during their period of supervision. Factors that increase risk include criminal history, gender, race, drug abuse problems, mental health issues, unemployment and the need for financial help, housing, and transportation.  Factors that decrease risk include having a strong social support system, marketable educational and vocational skills, motivation to change and age.

Ms. Farook does not have a criminal history; she does not suffer from substance abuse nor need mental health treatment. She does not need financial assitance, housing, nor transportation assistance.  She has created and maintains a strong family support system and a sincere purpose in her desire to take care of her family.  Ms. Farook, not being able to find a job, began her own business as a Cosmotolgist.  She works long hours, when permitted, and has found a measure of success in her new busienss.  In short, Ms. Farook has none of the factors that increase the risk of recidivism and she has all of the factors that decrease her risk of recidivism.

Ms. Farook is the classic example of the individual that comes before the Court one time and will never return again.  The criminal behavior at issue is the anomaly.  This too give rise to consider probation.

**OTHER LIKE CASES**

The Court may wish some information on other like cases in searching for the proper sentence for Ms. Farook.  While each case is obviously a situation unto itself, the Court can look to similar cases to assist in maintain uniformity in handing down a sentence.[4]

Accordingly, counsel for Ms. Farook performed a search to find similar cases that might

---

Hunt, Ph.D., and Jeremy Luallen, Ph.D., and the study was funded by the Department of Justice.
[4]  Counsel for Ms. Farook has reviewed the Sentencing Memorandum of Mr. Farook. In said Memorandum his Attorney lays out many like cases and circumstances.  Knowing the Court is well aware of these similar situations, Ms. Farook seeks to incorporated Mr. Farook's Memorandum here as well feeling a repeat of that information would be overly burdensome and unnecessary for this Court.

assist the Court.  At the outset, we wish to inform the Court that while there are many cases charged and prosecuted for Marriage Fraud none matched the facts of this case.  In nearly every other case the defendants comitted the frauds for monetary gain.  In those cases the defendant's concocted elaborate schemes, charged immigrants sometimes huge fees and conspired to break the law.  Sentences ranged from probation to around two years in prison for the most heinous of all the Marriage Frauds.  Most hovered in or around the eight months' range – but again it should be noted thee sentences were given to those who acted for money or selfish motivations, not out of concern for a family member.

These three cases may be instructive for the Court.  There were taken from local cases and across the country.  We admit at the outset we did not look at all cases with such a charge but tried to find ones that offered guidance.  Every case that follows was a planned scheme for money.

**1.  United States v. Nisha Bhargava and Ajit Bhargava (Santa Ana California  - January, 2016)**

Ajit and Nisha Bhargava ran a fraudulent marriage and visa business for citizens of India.  In many cases they charged between $15,000 and $60,000 to create false documents and sham marriages. They recruited underprivileged United States citizens and paid them $2,000 to participate in the sham marriages they and their family arranged.  They took false photos, falsified documents and practiced false interviews and often did not even pay their stooges for their services saying "who would believe a drug addict."

Ajit Baragava was sentenced to 7 months in prison  ($40,000 fine)
Nisha Bhargava was sentenced to 4 months in prison.
Their daughter received a rehab program with no jail.

**2.  United States v. Jamar Thomas, et al  (Rochester New York – October, 2017)**

Jamir Thomas and four associates organized a scheme to marry immigrants to local citizens for a fee or around $5,000.  Thomas hand selected local woman, recruited them and devised a plan for them to marry immigrants in order to obtain United States citizenship.  The group also prepared false documents and occasional even acted as witnesses for the weddings.  Federal agents performed a sting operation to capture the Thomas and his co-conspirators.

Jamar Thoams was sentenced to 12 months in prison.
Khaaliqa Kegler was sentenced to six months' home confinement.
Chimere Brooks, was sentenced to two years of probation.  No confinement.

3. **United States v. Jason Shiao  (Los Angeles California – April, 2017)**

Jason Shiao who falsely posed as an attorney as part of his elaborate scheme to dupe mostly Chinese immigrants into falsified marriages. Their general fee to immigrants was approximately $50,000. Shiao and his daughter, Lynn Leung (45) went to considerable lengths to make the marriages appear real including bogus photos, tax returns, marriage certificates, phony ceremonies, life insurance policies and bank accounts.  His acts were sophisticated and orchestrated and involved numerous victims.  He also paid U.S. citizens $15,000 to participate in the scheme.

Jason Shiao was sentenced to two years in prison.
Lynn Leung was sentenced to six months in prison.

The range for these example cases is anywhere from probation with no confinement up to two years' prison.  Yet in each an ever case there was a common thread, money.  The schemes and shams where done to make money. The parties planned and plotted ways to take advantage of others for the sheer purpose of making money.  They took advantage of distraught citizens of both the United States and those seeking to live here.  In many cases their schemes netted them a substantial windfall of unknown value.  And even in the worst case scenario the maximum sentence given was 2 years.

Ms. Farook shares nothing in common with these characters or their nefarious schemes. Indeed, in one case the parties were merely charged with the misdemeanor versions of this type of case.  It is not hard to surmise that but for the terrorist attacks that brought this case to light, this too would have been at most misdemeanor conduct.

## ATTACHMENTS

To assit the Court we have attached letters of recommendation and certificates that demonstrate some of Ms. Farook's successful activies.

**CONCLUSION**

There is no doubt that Ms. Farook made a poor choice.  She has accepted full responsibility.  The defense is confident that she will overcome this chapter in her life.

A probationary sentence, given the facts, circumstances of the case and the interests of justice are warranted as opposed to sending Ms. Farook to prison for any period of time. It would be difficult, for instance, to argue that a sentence that includes electronic monitoring would be inappropriate in this case.  Nor could it be said that such a sentence would not "afford adequate deterrence to criminal conduct."  But given the sentence given to the Co-Defendant and her husband Syed Raheel Farook, straight probation seems appropriate.

Therefore, based upon the consideration of the factors set forth in §3553(a), coupled with the statutory directive of §3553(a) that "the court shall impose a sentence, sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. §3553(a)(2)," the defense requests that this Court impose a sentence of probation.


Dated:  11/25/2020                    Respectfully submitted,


                              _____
                              DYKE HUISH
                              ATTORNEY FOR TATIANA FAROOK

# Riverside City College

Upon the recommendation of the Faculty
and by virtue of the authority vested in the
Riverside Community College District Governing Board of Trustees
the degree of

## Associate of Arts
Social and Behavioral Studies
With Great Distinction

is hereby conferred upon

## Tatiana A. Farook

with all Rights, Benefits and Privileges appertaining thereto in token
of the satisfactory completion of a two-year curriculum
Recognized on the twelfth day of June, two thousand and twenty



President, Board of Trustees

Chancellor, Riverside Community College District

President, Riverside City College

11



*Certificate of Outstanding Dedication*

*Tatiana Farook*

*Corona MOB*

*Has gone above and beyond the hours requirement for the 2017/18 Rotation in*

*It is with great pleasure that we honor you for your contribution of 144 Kp.org enrollments to the Health Scholar Program. Thank you for your dedication.*

Dayna Hernandez
Corona Health Department Coordinator
COPE Health Scholars
Kaiser Permanente Riverside

Linda V. Issildean
Program Manager
COPE Health Scholars
COPE Health Solutions

BreEZe - State of California                                                                                    https://www.breeze.ca.gov/datamart/quickStartMenuCADCA.do

CA.GOV   Department of Consumer Affairs
BREEZE

Skip navigation

*Logged in as FAROOK, TATIANA A*                                        Update Profile | Logoff | Contact Us

About BreEZe    FAQ's    Help Tutorials

**Quick Start Menu**

| License/Registration Information | Hide Details |
|---|---|

To start, choose an option, and you will return to this Quick Start menu after you have finished.

| License/Registration Number: | 543108 |
| License/Registration Type | Cosmetologist |
| License/Registration Status: | Current |
| License/Registration Expiration: | 09/30/2022 |
| Address: | |
| Residence Phone: | |

**License Activities**

Manage your license information

Cosmetologist  543108

<Choose Application>         [Select]

**Additional Activities**

Payment Receipts (2)

Add Authorized Representative

License Notification Subscription

More Info

**Applications**

Start a New Application or Take an Exam

<Choose Board>

<Choose Application>         [Select]

Finish Incomplete Applications

Cosmetologist - License by Reciprocity    [Select]

Back to Top | Conditions of Use | Privacy Policy | Accessibility
Copyright © 2019 State of California

1 of 1                                                                                            10/27/2020, 9:44 PM

13

# Riverside City College

Upon the recommendation of the Faculty
and by virtue of the authority vested in the
Riverside Community College District Governing Board of Trustees
the degree of

## Associate of Science
Math and Science
With Great Distinction

is hereby conferred upon

## Tatiana A. Farook

with all Rights, Benefits and Privileges appertaining thereto in token
of the satisfactory completion of a two-year curriculum
Recognized on the twelfth day of June, two thousand and twenty



President, Board of Trustees

Chancellor, Riverside Community College District

President, Riverside City College



Certificate of Outstanding Dedication

Tatiana Farook

Has gone above and beyond the KP.org enrollment requirement, for the 2017 A Rotation in

Urgent Care

It is with great pleasure that we honor you for your contribution of 24 enrollments to KP Riverside. Thank you for your dedication.

Trang Norouzi
Department Coordinator
COPE Health Scholars
Kaiser Permanente Riverside

Luiza Ursulescu
Program Manager
COPE Health Scholars
COPE Health Solutions



UCLA Executive Programs in Health Policy & Management

FIELDING SCHOOL OF PUBLIC HEALTH

*This certifies that*

*Tatiana Farook*

*has completed the requirements for*

*Patient Experience and Pre-Licensed Clinical Care*

*with 295.25 hours of service as a student in the Health Scholar Program*
*offered in partnership with COPE Health Scholars*
*at Kaiser Permanente Riverside*

*11/1/2016 – 10/1/2017*

*Kim Labraga*
*Assistant Medical Group Administrator*
*Kaiser Permanente Riverside*

*Becky Kim \**
*Program Manager*
*COPE Health Scholars*

*Leon J. Freidman*
*Director of Executive Programs in MPM*
*UCLA Fielding School of Public Health*

To Whom it May Concern:

I have known Tatiana Farook for the past 10 years. In this time I have had the opportunity to know her as my sister-in-law, coworker and business associate. The best quality that Tatiana possesses is that she is the most hard working person I know. Over the years I have had the chance to see her successfully run her own business. She does not hesitate to put in the hours or the work needed to achieve her goals.

As a coworker she was pleasant to have around and always had an upbeat attitude. She would always make time to help other fellow coworkers and took her job very seriously. She was at work on time and finished her work in a timely manner. She is a quick learner and picked up any new assignment effortlessly.

As my sister-in-law she has always been more like a sister that I can depend on. She is a great aunt to my kids. My kids love having her over and look forward to her visits. Our relationship is based on mutual trust and self respect. She regularly makes time for family and views family as very important.

Tatiana is a problem solver, she always has interesting ideas to help people with their problems. I am always amazed with her ability to solve problems efficiently. She is very dependable and never forgets her obligations as a mom, sister, relative and as a great friend.

Sincerely,

Saira Khan

Saira Khan

Anthony Rezai
6459 Amber Sky Way
Corona Ca 92880

To Whom It May Concern:

I have known Tatiana Farook as a great friend and more recently as a business partner for the better part of the last 3 years. In this time she has been a great addition to my life pushing me to pursue my personal goals and showing me with her great work ethic what it means to strive for success. I have watched her mentor employees and create business opportunities in the hair industry through her creativeness and willingness to help anyone that needs that help.

Additionally, I have seen her give back to the community through donations of her time and essential everyday needs. I find her always encouraging me to do the same in order to be a better version of myself. I am grateful that I have had the opportunity to have her be a part of my life. Tatiana is a great example of character, moral fortitude and determination. In my times of need both personally and professionally she has always been a solid shoulder for me to lean on and I hope I am able to reciprocate even a portion of the support she has bestowed upon me back onto her. Tatiana has made my workplace turn from a workplace into a small little family. Through her guidance and accountability everyone follows her example and strives to be as hard working and honest as she is. If necessary feel free to contact me at anthony_rezai@hotmail.com.

Sincerely,
Anthony Rezai